UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

ISSAK ALMALEH and ANTOANETA IOTOVA,

    Defendants.

No. 17 Cr. 25 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF
ISSAK ALMALEH'S MOTIONS TO SUPPRESS PHYSICAL EVIDENCE**

Ezra Spilke
Guy Oksenhendler
1825 Foster Avenue
Brooklyn, N.Y. 11230
(718) 783-3682
ezra@spilkelaw.com

*Counsel for Issak Almaleh*

-i-

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii
**PRELIMINARY STATEMENT** .......................................................................................... 1
**ARGUMENT** ........................................................................................................................ 2
    **I.    The Mail.com Warrant Was Based on a Materially Misleading Affidavit** .................. 2
        A.  Legal Standards ............................................................................................... 2
        B.  The Warrant Affidavit Mischaracterized or Omitted Critical facts, Rendering the Affidavit Materially Misleading ........................................................................ 3
    **II.   The Mail.com Search Warrant Lacked Particularity and Was Overbroad** ............. 4
        A.  Legal Standards ............................................................................................... 5
        B.  Nothing on the Face of the Warrant Informed the Executing Agents What Crime Was at Issue .................................................................................................................. 6
    **III.  The Residence Warrant Was Impermissibly Broad and Lacked Particularity** ........ 8
    **IV.  The Delay of The Off-Site Review of Devices Seized Pursuant to the Residence Warrant Was Unreasonable** ......................................................................................... 9
**CONCLUSION** ..................................................................................................................... 10

## TABLE OF AUTHORITIES

Cases

*Franks v. Delaware*, 438 U.S. 154 (1978) ............................................................................2, 3
*Groh v. Ramirez*, 540 U.S 551 (2004) ..................................................................................7, 8
*Illinois v. Gates*, 462 U.S. 213 (1983)........................................................................................4
*Marron v. United States*, 275 U.S. 192 (1927)..........................................................................8
*McColley v. County of Rensselaer*, 740 F.3d 817 (2d Cir. 2014)..............................................4
*United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009).......................................................8
*United States v. Canfield*, 212 F.3d 713 (2d Cir. 2000)............................................................3
*United States v. Coreas*, 419 F.3d 151 (2d Cir. 2005).............................................................3
*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) ..............................................................8
*United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), *on reh'g en banc*, 824 F.3d 199 (2d Cir. 2016)......................................................................................................................................9
*United States v. O'Donnell*, 840 F.3d 15 (1st Cir. 2016) ..........................................................7
*United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013).................................................2, 3
*United States v. Ramirez*, 523 U.S. 65 (1998).........................................................................9
*United States v. Usher*, 309 F. Supp. 3d 820 (C.D. Cal. 2018) ...............................................7
*United States v. Vilar*, No. 05 Cr. 621, 2007 WL 1075041, (S.D.N.Y. Apr. 4, 2007) .................7
*United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017)...................................................5
*United States v. Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013)................................ 5, 6, 7, 8
*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007).............................................................................6

Statutes

18 U.S.C. § 1344...........................................................................................................................7

Other Authorities

Fed. R. Crim. P. 41 advisory committee's notes to the 2009 amendments ...................................10
Fed. R. Crim. P. 41(e)(2)(B)............................................................................................................9

## PRELIMINARY STATEMENT

By the time federal agents arrived at their residence announced, Issak Almaleh and his wife, co-defendant Antoaneta Iotova, had been fighting Deutsche Bank National Trust Company ("DBNT") in and out of civil court in Florida for years. DBNT and the defendants contested the ownership of several real properties in Florida and New York.

Simultaneously with the civil actions, DBNT was cooperating with a special agent with the Federal Deposit Insurance Corporation Office of the Inspector General ("FDIC"): Jamie Brooks. DBNT told Special Agent Brooks that the transactions recorded with Broward County and New York City officials were fraudulent in that none of the transactions had actually occurred.

Based on DBNT's information, Special Agent Brooks swore out two search warrant applications: one to search an email account used by Ms. Iotova (the "Mail.com Warrant") and another to search the defendants' residence that they shared with their two teenaged daughters (the "Residence Warrant").

Probable cause in support of the Mail.com warrant hinged on the account that DBNT fed to Special Agent Brooks. But the affidavit failed to mention the history – both in and out of court – between DBNT and the defendants. Special Agent Brooks thus deprived the magistrate of information crucial to her evaluation of the reliability and objectivity of the source of that information.

Both warrants themselves were overbroad and lacked particularity. They left the material to be searched and seized to the discretion of the executing agents. Accordingly, many pages and gigabytes of personal information was swept up in the searches and dumped on the defendants and their counsel.

Finally, the agents seized all of the devices in the residence but waited twenty-two

months to complete their search of those devices. Just as with the *issuance* of warrants, the *execution* of warrants must be reasonable. The agents here used the nearly two years during which they had possession of the devices of the defendants and their two teenaged daughters to root around in their most private details.

The exhibits cited herein are described in and appended to the declaration of Ezra Spilke in support of Mr. Almaleh's motions. In the interest of judicial economy, Mr. Almaleh incorporates the statement of facts set forth in his wife's brief in support of a motion to dismiss or, in the alternative, for a bill of particulars. He also joins in her Rule 12 motions.

## ARGUMENT

### I. The Mail.com Warrant Was Based on a Materially Misleading Affidavit

Agents procured the Mail.Com Warrant with a deliberately false and misleading affidavit. The affidavit misrepresented or omitted critical facts regarding the asserted basis for probable cause. These misrepresentations were at least reckless and possibly were intentional. A truthful and fulsome warrant affidavit would not have furnished probable cause to search Ms. Iotova's email. For this reason, all evidence obtained pursuant to this search warrant must be suppressed.

#### A. Legal Standards

Under *Franks v. Delaware*, a defendant may challenge a search conducted pursuant to a warrant where the affidavit submitted in support of the warrant application is alleged to be deliberately or recklessly false or misleading. *See* 438 U.S. 154, 155-56 (1978). To prevail, a defendant must show that the warrant affiant made at least recklessly false statements or omissions that were material to the issuing court's finding of probable cause. *See Franks*, 438 U.S. at 156; *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013).

The two relevant inquiries are (1) whether an affidavit was intentionally or recklessly

misleading and (2) whether any misstatement or omissions in the affidavit were material. *See, e.g.*, *Rajaratnam*, 719 F .3d at 146; *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000). To determine whether misstatements are "material," a court must set aside the falsehoods in the application and determine whether what remains supports a finding of probable cause. *See, e.g.*, *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005).

For omissions, the court must determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for a search. *See Rajaratnam*, 719 F.3d at 146. And when an affidavit contains misstatements and omissions, a reviewing court does not afford any deference to the magistrate judge's probable cause determination. *See Canfield*, 212 F.3d at 717. If the defendant meets the *Franks* standard, then the "search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 156.

> B. The Warrant Affidavit Mischaracterized or Omitted Critical facts, Rendering the <u>Affidavit Materially Misleading</u>

In its recitation of probable cause, the warrant affidavit set forth an account of the agent's review of property records. The agent then tied that information to fraud by stating the following:

> Based on my conversations with employees of DBNT, I have learned that none of the deeds are bona fide documents and none of the transactions reflected in those deeds ever actually occurred.

(Ex. A at p. 6).

The agent failed to inform the magistrate that the key piece of information allegedly making the foregoing transactions fraudulent was being provided by one or more banks that were involved in litigation against the defendants. The banks' potential bias should have been disclosed and was a material omission.

In the context of paid, police informants, courts have long recognized that special

procedures attach when information is provided by someone other than an identified, disinterested, citizen witness. In the context of police informants, to decide whether a confidential witness or informant's information provides probable cause to support a search warrant, a court must consider the totality of the circumstances, including the informant's veracity, reliability, and basis for knowledge, as well as whether the informant's information has been corroborated by independent police investigation. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 228-30 (1983); *McColley v. County of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014).

The same logic applies here. At the time that the warrant affidavits were sworn out, DBNT, for example, had been involved in several actions against the defendants or against entities that the defendants controlled. A truthful and accurate affidavit should have informed the magistrate of the bank-informants' interest in the case. Instead, the affidavit misrepresented that the information came from disinterested, bank-employee witnesses. It thus misrepresented and withheld information that was absolutely critical to the magistrate's assessment of the banks' reliability and veracity, and the probable cause determination. This was materially misleading, and the omission was at least reckless and perhaps intentional.

Striking the key information provided by DBNT, the affidavits are left only with the agent's review of property records to support probable cause. That is facially insufficient. The transactions reflected in the property records were not inherently criminal. The agent – and the magistrate – needed the (self-serving) information provided by DBNT to establish probable cause. All evidence derived from the Mail.com Warrant must be suppressed.

## II. The Mail.com Search Warrant Lacked Particularity and Was Overbroad

The Government violated the defendants' Fourth Amendment rights by seeking and executing an unconstitutionally overbroad warrant that authorized the search and seizure of the defendants' most private communications. Today, our most sensitive records are not kept in our

-4-

homes and cabinets. They are maintained on our smartphones, and stored on servers controlled by tech companies. The contents of our most private discussions are kept in emails, text messages, and social media messages stored on our phones. Family photos reside there; information about health conditions, relationships, finances, political opinions, sexual orientation, and daily habits are stored on our phones and preserved for safe-keeping on servers operated by companies like Mail.com.

In this case, the Government obtained a search warrant to seize the contents of the defendants' Mail.com email account and had law enforcement agents rummage through that production to produce the materials turned over in discovery in this case. The electronic files eventually produced as search warrant returns from Mail.com reveal the overbreadth in the warrant's list of items to be seized and also illustrate the warrant's lack of particularity.

The warrant returns included large amounts of emails concerning personal matters, wholly unrelated to the allegations here of bank fraud. Most, if not all, of the materials seized pursuant to this warrant are not tied to the probable cause showing in the warrant's application. Because the warrant and its execution here were impermissibly overbroad, the government violated the defendants' Fourth Amendment rights, requiring suppression of all fruits of the search.

   A. <u>Legal Standards</u>

The Warrants Clause of the Fourth Amendment "both requires particularity and forbids overbreadth." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013) (Oetken, J.) (citation omitted). "Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017) (quoting *Zemlyansky*, 945 F. Supp. 2d at 453).

A search warrant is overbroad if its "'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *Wey*, 256 F. Supp. 3d at 382; *see also Zemlyansky*, 945 F. Supp. 2d at 464 ("In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.'"). Probable cause is demonstrated where "the totality of circumstances indicates a 'fair possibility that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (citations omitted).

B. Nothing on the Face of the Warrant Informed the Executing Agents What Crime Was at Issue

The Mail.com affidavit did not establish probable cause to seize several-years'-worth of the defendants' private conversations. Seized emails included 100s of personal conversations between the defendants' and friends and family. The reason that agents seized large amounts of irrelevant content is that the Mail.com warrant itself was impermissibly broad. It authorized agents to seize:

> a. Communications related to the subject offenses (including but not limited to communications regarding additional properties fraudulently claimed by the Target Subjects that have not yet been identified by law enforcement), contact lists and address books, videos, images, and other stored content information presently contained in the Subject Account;
>
> b. Evidence concerning the identity and location of the users of the Subject Account, including but not limited to communications showing to whom the Subject Account belongs;
>
> c. Evidence concerning identities and locations of co-conspirators in the Subject Offenses, including communications with co-conspirators, photos, videos, or other attachments, and address book information;
>
> d. Evidence of the relationships between co-conspirators involved in the Subject Offenses . . .

(Ex. B at 4-5).

In a "thoughtful and scholarly opinion," *Zemlyansky*, 945 F. Supp. 2d at 453, Judge Karas

-6-

noted "two factors that, above others, tend to define a warrant's insufficient particularity." *United States v. Vilar*, No. 05 Cr. 621, 2007 WL 1075041, at *22 (S.D.N.Y. Apr. 4, 2007):

> First, warrants are generally found to be insufficiently particular where nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken. Second, warrants will frequently lack particularity where they include a general, catch-all paragraph or provision, often one authorizing the seizure of any or all records of a particular type.

*Id.* (quotation marks, citations, and alterations omitted); *see Zemlyansky*, 945 F. Supp. 2d at 453-59 (applying *Vilar*).

The Mail.com Warrant was not *completely* devoid of any hint of the offenses alleged. There is a single reference to violations of 18 U.S.C. § 1344 and 1349, which the warrant described as the "Subject Offenses." (Ex. B at p. 4).[1] So, an executing agent could thus deduce that the allegations related to some species of bank fraud. *See* 18 U.S.C. § 1344. But bank fraud may be committed by any one of hundreds of different means: from fraudulently obtaining victims' personal identification numbers, *e.g.*, *United States v. Usher*, 309 F. Supp. 3d 820 (C.D. Cal. 2018), to making false statements in a loan application, e.g., *United States v. O'Donnell*, 840 F.3d 15 (1st Cir. 2016). The face of the warrant gave the agents no indication what species of bank fraud – and, by extension, what instrumentalities of that fraud – they were searching for.

In a comparable case, Judge Oetken disagreed with the government's assertion that a bare citation to a statute – in that case, the statutes related to different kinds of fraud and money laundering – gave the executing agents notice of the alleged crime at issue. *Zemlyansky*, 945 F.

---

[1] The Mail.com Warrant did not incorporate the agent's affidavit by reference. So, the warrant could not be used by the executing agents to provide any possible limitation as to communications subject to the warrant. *See Groh v. Ramirez*, 540 U.S 551, 554-55 (2004) (warrant that did not include reference to supporting application or affidavit and did not accompany the warrant provided no basis for searching agents to limit the search).

Supp. 2d at 454. Judge Oetken noted that the warrant gave no "actual limitation based on criminal offense." *Id.* at 455. Similarly, the mere citation to the Bank Fraud Act in the Mail.com Warrant was insufficiently limiting. A warrant, like the Mail.com Warrant, that allows agents to search every communication without limitation is overbroad on its face.

**III.    The Residence Warrant Was Impermissibly Broad and Lacked Particularity**

The Residence Warrant, like the Mail.com Warrant, did not inform the executing agents what evidence they were meant to seize. It appears that every electronic device at the residence was seized. In effect, the Residence Warrant allowed the agents to conduct a general search of the residence and the devices found there.

The particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927). "Where . . . the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance. . . . [A]dvances in technology and the centrality of computers in the lives of average people have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013); *see also United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009) ("If the warrant is read to allow a search of all computer records without description or limitation it would not meet the Fourth Amendment's particularity requirement.").

The particularity set forth in a warrant affidavit, unless it is incorporated by reference in the warrant itself, will not rescue an otherwise deficient warrant. "The fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557.

Here, the Residence Warrant authorized the executing agents to seize occupancy evidence, evidence of communications with alleged co-conspirators or victims of the two schemes alleged, evidence about the allegedly false and fraudulent deeds and evidence concerning the proceeds of the allegedly fraudulent property transfers. (Ex. D at p. 4). The warrant also authorized agents to seize *any* computer or smart phone that *may* contain any of the foregoing evidence. (Ex. D at pp. 4-5).

The Residence Warrant fell far short of the Fourth Amendment's particularity requirements when the search of electronically stored information ("ESI") is at issue. Indeed, it does not appear that any electronic device was left behind at the residence. Much, perhaps most, of the data production resulting from the government's review of the ESI consisted of private and family photos.

### IV. The Delay of The Off-Site Review of Devices Seized Pursuant to the Residence Warrant Was Unreasonable

It took agents approximately twenty-two months to complete their search of the devices seized from the defendants' residence, which they shared with their teenaged daughters. The devices contained years' worth of family photos and other private information. Some devices were clearly exclusively used by one of the teenaged daughters. The Fourth Amendment does not permit such a sweeping invasion of privacy.

The federal Rules of Criminal Procedure authorize a later, off-site review of ESI. Fed. R. Crim. P. 41(e)(2)(B). But the off-site review may not be unreasonably delayed. "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted); *see also United States v. Ganias*, 755 F.3d 125, 136 (2d Cir. 2014), *on reh'g en banc*, 824 F.3d 199 (2d Cir. 2016) ("The off-site review of these mirror images . . . is still subject to the

rule of reasonableness.").

The Rules did not place a presumptive period within which off-site copying and review of ESI must take place. Rather, the advisory committee's notes to the 2009 amendments noted what may delay the review of ESI:

> A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs.

Fed. R. Crim. P. 41 advisory committee's notes to the 2009 amendments.

Here, the search of the defendant's residence and the seizure of their electronic devices occurred on or about January 25, 2017. The government did not produce the ESI from those devices until October 2018, (*see* Ex. E), some twenty-two months later. It does not appear that any obstacles – like encryption or "booby traps" – prevented the government from producing that information sooner. The size of the data storage was not especially large. The number of devices was in line with what a family of four with a home office would have. It appears, therefore, that the agents ignored all reasonable limits on their search and fished around in the most private information of the defendants and their minor daughters.

## CONCLUSION

Because of the illegal actions of law enforcement in this case, both physical evidence and electronic information obtained as a result of that unconstitutional conduct should be suppressed.

Dated:   Brooklyn, New York
         August 31, 2020

                                      Respectfully submitted,

                                      */s/ Ezra Spilke*
                                      Ezra Spilke, Esq.
                                      *Counsel for Issak Almaleh*
                                      1825 Foster Avenue, Suite 1K

-10-

                                        Brooklyn, NY 11230
                                        Tel: (718) 783-3682

TO:    Audrey Strauss
         Acting United States Attorney
         Southern District of New York
         One Saint Andrews Plaza
         New York, N.Y. 10007
Attn:  Robert Sobelman, David Denton
         Assistant United States Attorneys