

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 23, 2022

**BY ECF AND BY EMAIL**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Issak Almaleh and Antoaneta Iotova*, S1 17 Cr. 25 (ER)

Dear Judge Ramos:

    The Government respectfully submits this letter in opposition to defendants' motion *in limine*, filed February 22, 2022 (the "Defense Motion" (Dkt. 484)). The Defense Motion should be denied.

    The defendants seek to preclude the Government from introducing testimony from three victim witnesses regarding the circumstances of their evictions from homes that the defendants, who did not own those properties, purported to rent to them. They also seek to preclude certain victims from testifying: (i) that the victims learned from others that the defendants had perpetrated their scheme against additional victims and (ii) that the victims, upon learning what had happened, believed they had been "scammed." Finally, the defendants seek to exclude certain judicial documents.

    **I.    Victim Witnesses Should Be Permitted to Testify About the Circumstances of their Evictions**

    The defendants argue that victim testimony about the circumstances of their evictions is "irrelevant to the charges and . . . inflammatory." (Def. Mot. At 1). The defendants are wrong: Such evidence is relevant, highly probative, and does not create a risk of unfair prejudice.

    That the victims were evicted from homes the defendants purported to rent to them is obviously relevant to the charged crimes—a scheme to defraud those victims by renting them homes the defendants did not own. *See* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action"). So, too, are the circumstances of those

evictions. And as the victims recount what happened to them, they should not be required to whitewash their accounts.

This Court should not countenance defendants' efforts to conceal the effects of their crimes—purporting to rent apartments they did not in fact have the ability to rent, and thus robbing victims of money and a place to live and exposing them to frightening police encounters and homelessness—from the jury. "[T]he prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Old Chief v. United States*, 519 U.S. 172, 188 (1997). Evidence of harms far more severe than those caused by fraudulently renting properties has properly been admitted at trials. *See, e.g.*, *United States v. Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001) (autopsy photos admissible despite defendant's willingness to stipulate that beating of victim occurred and defendant's claim that photos invited jury to convict based on revulsion at beating; details of victim's injuries were "legally and morally relevant to the conduct constituting the offenses committed"); *United States v. Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (upholding introduction of victim testimony and "significant" number of "graphic" and "disturbing" photographs of World Trade Center bombing victims, including corpse of pregnant woman, despite defendants' offer to stipulate that the bombing caused harm).

When the victims testify, they may properly discuss who they are, how they came to rent properties from the defendants, and how they were defrauded—testimony that necessarily touches upon the victims' financial circumstances and the ill effects of their spending money to rent homes only to be evicted. The Government must be permitted "to place its evidence before the jurors," *Old Chief*, 519 U.S. at 188, including through witness accounts of being victimized by the defendants. Victims' personal and financial circumstances, as well as the (in some instances dramatic) circumstances surrounding their evictions, are also relevant to explain how they remember certain details about their interactions with the defendants.

Nor would such statements by victim witnesses be unfairly prejudicial. To be sure, *any* proof probative of guilt is prejudicial to the interests of the defendant. But nothing about this particular probative evidence would be "unfair." *See Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair."). The harm that the defendants' conduct inflicted is not an extrinsic fact that generally casts the defendants in a bad light; it is an intrinsic part of the story of the charged crimes. And evidence that borrowers suffered serious consequences because of the defendants' fraudulent scheme is far less likely to inflame the jury than properly admitted evidence of harms inflicted by defendants in other cases. *See, e.g.*, *Salameh*, 152 F.3d at 122-23; *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008) (upholding admission of images of child pornography despite defendant's willingness to stipulate; "The court is not required to 'scrub the trial clean of all evidence that may have an emotional impact.'" (quoting *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008))).[1]

---

[1] Notably, in the line of cases cited here—*Old Chief*, *Salameh*, and *Ganoe*—defendants offered to stipulate to the element the challenged evidence was offered to prove. By contrast, the defendants here have neither proposed nor agreed to enter into any such stipulations.

The Government does not intend to introduce a great volume of evidence on this issue,[2] but it is permitted under the law "to place its evidence before the jurors." *Old Chief*, 519 U.S. at 188. The defendants' motion should therefore be denied.

## II. The Court Should Permit Testimony and Other Evidence Reflecting the Victims' Belief that They Were Defrauded

The defendants argue that the Government should not be permitted to introduce text messages that F'Lesson Wood—a testifying witness—sent to the defendants in which Wood stated: "We were homeless and you took our last 2400. and it was a scam." That argument is meritless.

That evidence is relevant to Wood's state of mind and to explain his actions as well as to the defendants' knowledge and intent. Wood's text message conversation with the defendants reflects, among other things, that Wood told one or both of the defendants that the police had kicked him out of the home the defendants purported to rent to him, that Wood repeatedly asked for his money to be returned to him, that the defendant responded by doubling down, insisting that he or she in fact owned the home, and ultimately ignored Wood's request for the return of his money. Wood sent the following messages to the two phone numbers he and his mother had used to initially contact the defendants to rent the property—the same phone numbers that appear on fake business cards that bear the names of the defendants:

> Wood: Can we please meet up with the money?
> Wood: We really need the money back
> Wood: Can I please have a refund?
> Wood: We have,been kicked out of the house by the police
>
> Defendants: They have no right to do so
> Defendants: How is it possible
>
> Wood: They said the property is bought alreqdy
> Wood: They said the property is bought already
>
> Defendants: Yes by me
>
> Wood: And is going on sale online
>
> Defendants: Bought by me
> Defendants: I am not selling
>
> Wood: Anita please can we have our money back..we really need it to.look for a place

---

[2] The Government does not intend to introduce statements by one of the victims that her son's mental illness worsened as a result of the defendants' conduct. *See* Defense Motion at 2, 3.

Defendants: I'll find you a place

Wood: Its okay, well.just take the refund please
Wood: We appreciate what you have done but we'll take the refund
Wood: Can you please come to the house and drop it off?

Defendants: You have no choice

Wood: Can you please come drop our money off at the 3581 address

Defendants: Hi I am in ny
Defendants: As I told you

Wood: Can you please money order
Wood: You would be a big help if you could do money order
Wood: Please send out the name to Jennifer Patterson
Wood: Or come drop if off
Wood: Please
Wood: If it was your house how come you didn't call not once to see what's going on?
Wood: And i.don't think your at mew York…can you.please come back and.give us back.our refund
Wood: And i.don't think your at new York…can you.please come back and.give us back.our refund
Wood: If you.was us in this position you would want us to do the same
Wood: Good morning can you please return the money
Wood: Where's are refund??
Wood: Anita can you please bring back the refund..we have no where to go
Wood: We were homeless and you took our last 2400. And it was a scam…all were asking for is our money back….please
Wood: Now we have no were to go
Wood: Why?

Defendants: Stay there

Wood: Please I'm asking you for our money back that's all
Wood: We have no where to go please have a heart
Wood: All we need is our money and you can go about your day please
Wood: We were looking forward to the money to have a place and now we don't have anywhere..
Wood: please I'm asking you to come back and give us the money back
Wood: Please
Wood: I am.begging you please
Wood: Please return the money
Wood: Are you coming?
Wood: Can i please have a refund?
Wood: we have been kicked out.of the house

>Wood: We have your full info, we know who you really are.. Now.is your chance to.give the refund back
>Wood: Anita can you please bring back the refund..we have no where to go

It is difficult to imagine a set of communications more relevant and probative. That Wood believed he had been "scam[med]" explains his subsequent actions, including why he repeatedly demanded his money back and why he ultimately moved out of the house with his family. That he told the defendants he believed he had been scammed is directly relevant to the defendants' knowledge that they did not own the properties they purported to rent and to their intent to defraud. *See United States v. Dupree,* 706 F. 3d 131, 137 (2d Cir. 2013) (statement is not hearsay where "it is offered, not for its truth, but to show that a listener was put on notice" of illegal acts). And that one or both of the defendants told Wood to "Stay there" in response to Wood's statement that it was a "scam" and that he had nowhere to go is highly probative of the defendants' intent to violate the law.

Furthermore, omitting Wood's statement that he believed the defendants had "scam[med]" him would allow the defendants to create the misleading impression that Wood had moved out and was demanding his money back due to a misunderstanding or for some other reason, rather than because the defendants had defrauded him.

Finally, Wood's statement is not unduly prejudicial. *See* Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"). Wood's statement that "it was a scam" is not inflammatory. It is no more prejudicial than the charges brought against the defendants in this case; indeed, it mirrors those charges.

More generally, witnesses—including Wood and other victim witnesses—may testify regarding their own opinions so long as that testimony is "rationally based" on their perceptions; "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Wood's opinion that he was subject to a "scam" is just that. And because Wood is a testifying witness, the defendants are free to cross him about his opinion.

### III. Victim Witnesses Should Be Permitted to Testify About What They Learned From Others Regarding the Defendants' Conduct for Non-Hearsay Purposes

The Government should be permitted to introduce evidence of statements made to victim witnesses that the defendants had perpetrated their fraud on other victims for the non-hearsay purpose of their effects on the listeners and to explain the listeners' subsequent actions. A statement that is offered to show its effect on the listener is not hearsay. *Dupree*, 706 F.3d at 136; *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006).

For example, the Government expects that Denise Torres will testify that, after the police came to tell her she was not rightly in the home the defendants purported to rent her and had to leave, she learned from the management of the property that the defendants had fraudulently rented that property before. In part as a result of that, Torres then followed the defendants to a residence

where she believed they resided, and confronted the defendants outside that residence. Torres will then testify to defendant Iotova's reaction to being confronted.

More broadly, where victims took actions based on their having learned that the defendants had "scammed" them and others, such statements are admissible not for their truth but to provide context necessary for the jury to understand the victims' actions and the statements' effect on the victims. The Court can prevent undue prejudice with a limiting instruction to the jury that such statements should not be considered for their truth. *See, e.g.*, *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994) ("Because the jury was instructed not to consider the out-of-court declarations as proof of the truth of what was said, technically no hearsay evidence was received"); *see also United States v. Arline*, 630 F. App'x 35, 41 (2d Cir. 2016).

### IV.    Three Court Documents Should Be Admitted

Finally, the defendants object to the admission of three court documents (the "Court Documents") that contain declaratory and/or default judgments regarding the ownership of particular properties by parties other than the defendants and reflect that they were served upon the defendants and/or the entities they controlled. The Government intends to offer these documents to demonstrate that the defendants were put on notice that they did not own the properties they purported to own—a non-hearsay purpose. *See Dupree*, 706 F.3d at 137. Those documents are highly probative of the defendants' knowledge and intent. Here, too, the Government would not oppose a limiting instruction to the effect that the jury should consider the documents not for their truth but for the permissible purpose of demonstrating the defendants' knowledge, in order to avoid undue prejudice. *See Reyes*, 18 F.3d at 69; *Arline*, 630 F. App'x at 41.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:    /s/_____
Rebecca T. Dell
Matthew King
Elizabeth Hanft
Assistant United States Attorneys
(212) 637-2198/2384/2334

cc:    Susan Marcus, Esq. (by ECF and email)
Thomas H. Nooter, Esq. (by ECF and email)
Ezra Spilke, Esq. (by ECF and email)